UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ARBONNE INTERNATIONAL, LLC, | Case No. 2:18-CV-1378 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| NAYAT SEMERCIYAN, | |
| Defendant(s). | |

Presently before the court is plaintiff Arbonne International, LLC's ("Arbonne") motion for default judgment. (ECF No. 11).

**I.    FACTS**

This action arises from defendant Nayat Semerciyan's ("Nayat") willful infringement of Arbonne's intellectual property through the sale of counterfeit products. (ECF No. 1). Arbonne asserts the following allegations in its compliant:

On July 22, 2016, Arbonne filed a complaint against Nayat in the United States District Court for the District of Nevada. *Arbonne Int'l, LLC v. Semerciyan*, No. 2:16-cv-01728-JAD-VCF (D. Nev. 2017); (ECF No. 1). Nayat and her co-defendant, Nu-Vo, did not timely file an answer. *Id*. After Arbonne moved for entry of default, Nayat contacted Arbonne's counsel to discuss the lawsuit. *Id*.

On November 7, 2016, Arbonne entered into a settlement agreement with Nayat and Nu-vo. *Id*. Arbonne has provided a copy of the agreement, which provides that Nayat would not sell, advertise, or facilitate the sale or advertisement of any products bearing Arbonne's intellectual property. *Id*. The agreement also contains a liquidated damages clause that requires Nayat to pay $15,000 for each violation of Arbonne's intellectual property rights. *Id*.

James C. Mahan
U.S. District Judge

On December 27, 2017, the court entered a final judgment and permanent injunction restraining Nayat from infringing Arbonne's intellectual property pursuant to the settlement agreement. *Id*. Shortly thereafter, Nayat began advertising infringing products through her Facebook page. *Id*. Arbonne provided Facebook with a copy of the final judgment and Facebook suspended Nayat's account. *Id*.

At some time in 2017, Arbonne discovered a website, www.ijewelsintl.com, that advertised and sold products that infringed Arbonne's trademarks. *Id*. These products included various accessories such as necklaces, earrings, and hats. *Id*. On March 28, 2018, Arbonne filed a lawsuit against the website and eventually discovered that Nayat was the operator. *Id*. Discovery also revealed that Nayat had opened a second website, www.iwiall.com, selling infringing products on March 8, 2018. *Id*.

On July 25, 2018, Arbonne initiated the instant action, asserting five causes of action: (1) counterfeiting in violation of the Lanham Act, 15 U.S.C. 1051 *et. seq.*; (2) trademark infringement; (3) unfair competition and false designation in violation of the Lanham Act; (4) copyright infringement; and (5) breach of contract. *Id*.

On September 10, 2018, Arbonne filed a motion for entry of clerk's default against Nayat. (ECF No. 7). On September 11, 2018, the clerk entered default. (ECF No. 8). Now, Arbonne moves for default judgment. (ECF No. 11).

## II. LEGAL STANDARD

Obtaining a default judgment is a two-step process. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule."

The choice whether to enter a default judgment lies within the discretion of the court. *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980). In the determination of whether to grant a default judgment, the court should consider the seven factors set forth in *Eitel*: (1) the

possibility of prejudice to plaintiff if default judgment is not entered; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. 782 F.2d at 1471–72. In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also* Fed. R. Civ. P. 8(d).

### III. DISCUSSION

Arbonne has complied with Rule 55(a) and Nayat has had ample opportunity to participate in this litigation. *See* Fed R. Civ. Proc. 55(a). Accordingly, the court now considers the *Eitel* factors to determine whether to issue default judgment in favor of Arbonne. The court first addresses the sufficiency of the complaint and the merits of Arbonne's claims.

*a. Counterfeiting*

Section 1114 of the Lanham Act prohibits the use of "any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a).

To prevail on a counterfeiting claim under the Lanham Act, the mark in question must be "(1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011);

Arbonne holds many registered trademarks, including a trademark in its AA logo and marks that include "Arbonne" as a term. (ECF No. 11). Nayat used exact copies of these marks on the kinds of products that Arbonne typically sells, such as jewelry and makeup. (ECF Nos. 11, 12, 13). Thus, based on the complaint and the substantive record, Arbonne has sufficiently pleaded counterfeiting and shown that its claim is meritorious.

. . .

. . .

James C. Mahan
U.S. District Judge

*b. Trademark infringement*

To prevail on a claim for direct trademark infringement, a plaintiff must show "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quotes and citation omitted).

Arbonne has shown that it has a protectable ownership interests in various marks by providing the marks' registration numbers. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) (holding that registration of a mark is *prima facie* evidence of validity and the exclusive right to use the mark). Therefore, the court proceeds to the central inquiry of a trademark infringement claim—"whether a reasonably prudent marketplace consumer is likely to be confused as to the origin of the good or service bearing one of the marks." *Stone Creek, Inc. v. Omnia Italian Designs, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017) (quotes and citation omitted).

To determine whether a likelihood of confusion exists, courts apply the eight *Sleekcraft* factors: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *JL Beverage*, 828 F.3d at 1106 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)).

The *Sleekcraft* factors are "guideposts for determining whether a likelihood of consumer confusion exists, and are adaptable to specific cases." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 874 (9th Cir. 2014) (quotes omitted).

According to the allegations in the complaint and the record before the court, Nayat used Arbonne's unique marks on goods that Arbonne typically sells. (ECF Nos. 11, 12, 13). Nayat then advertised and sold her counterfeit goods online through Facebook and multiple websites, which allowed her to reach a large number of potential customers. *Id*. It is also apparent that Nayat used Arbonne's marks to fool Arbonne's consumers, who likely do not exercise great caution, into believing that Nayat's goods were genuine Arbonne products. *Id*. Thus, under the *Sleekcraft* factors, there exists a substantial likelihood of consumer confusion.

Accordingly, Arbonne has sufficiently pleaded and adequately supported its trademark infringement claim.

### c. Unfair competition and false designation of origin

The analysis of unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) "is oftentimes identical" to infringement claims under Section 32 of the Act, 15 U.S.C. § 1114. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir.1999). Based on the allegations in the complaint and the circumstances of this case, such is the case here. Thus, Arbonne has sufficiently pleaded and supported its claim for unfair competition and false designation of origin.

### d. Copyright infringement

To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) that the accused infringer copied original expression from the copyrighted work. *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (citation and quotes omitted). "Because the requirement is one of substantial similarity to protected elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) (emphasis in original).

Arbonne has alleged copyright ownership in its AA logo and has provided the respective copyright numbers. (ECF Nos. 1, 11, 12). Nayat used a copy of Arbonne's logo on the products that she advertised and sold online. (ECF Nos. 12, 13). Thus, Arbonne has sufficiently pleaded and shown that Nayat infringed its copyrights.

### e. Breach of contract

To prevail on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2001); *see also Sierra Dev. Co. v Chartwell Advisory Group, Ltd.*, 223 F. Supp. 3d 1098, 1103 (D. Nev. 2016).

The parties entered into a settlement agreement that required Nayat to refrain from (1) advertising or selling products bearing Arbonne's trademarks or copyrights; (2) using Arbonne's intellectual property in any manner; and (3) importing, producing, distributing, selling, or advertising any products bearing Arbonne's intellectual property. (ECF No. 1). Shortly after entering this agreement, Nayat began to sell counterfeit Arbonne products. (ECF Nos. 11, 12, 13). Thus, based on the allegations in the complaint and the substantive record, Nayat breached the settlement agreement on multiple occasions.

*f. Summary*

Arbonne has filed a complaint asserting allegations that, if taken to be true, would allow Arbonne to prevail on all five causes of action. *See* (ECF No. 1). The substantive evidence before the court, which consists of the settlement agreement, declarations with exhibits, trademark registration numbers, and copyright numbers, shows that Arbonne's claims are meritorious. *See* (ECF Nos. 1, 11, 12, 13).

Failure to enter default judgment would prejudice Arbonne as it would preclude any legal remedy for Nayat's infringing activity. *See Eitel*, 782 F.2d at 1471–72. There also does not exist any dispute of material facts as Nayat has not appeared in this action. *See id*. Moreover, nothing in the record suggests that Nayat's default was due to excusable neglect. *See id*.

Accordingly, because the *Eitel* factors weigh in favor of default judgment, the court will grant Arbonne's motion.

*g. Damages*

Lastly, the court considers the appropriate measure of damages. Arbonne argues that it is entitled to an award in the amount of $475,000 based on the following formulation: $400,000 for trademark infringement; $30,000 for copyright infringement; and $45,000 for breach of contract. (ECF No. 11). Arbonne requests statutory damages for its copyright infringement and trademark infringement claims. *Id*.

*i. Trademark infringement*

For trademark infringement involving the use of a counterfeit mark, a trademark holder can recover "not less than $1,000 or more than $200,000 per counterfeit mark" in statutory

damages. 15 U.S.C. § 1117(c)(1). When trademark infringement is willful, the court can award "not more than $2,000,000 per counterfeit mark . . . as the court considers just." 15 U.S.C. § 1116(c)(2). Willful infringement occurs when a defendant knowingly and intentionally infringes a plaintiff's trademark rights. *See Earthquake Sound Corp v. Bumper Indus.*, 352 F.3d 1210, 1216–17 (9th Cir. 2003).

Before Nayat engaged in the infringing acts relevant in this action, a court issued a judgment against Nayat holding that she infringed Arbonne's trademarks by selling products bearing Arbonne's marks. (ECF No. 1). Thus, Nayat knew that she was infringing Arbonne's trademarks when she continued to advertise and sell counterfeit products. This willful conduct allows the court to impose up to $2,000,000 per counterfeit mark in statutory damages.

Arbonne requests statutory damages for Nayat's infringement of two trademarks, which allows a recovery of up to $4,000,000. (ECF No. 11). Such an award would not be commensurate with Nayat's infringing acts. Therefore, the course exercises its "wide discretion" and reduces statutory damages to a total of $400,000. *See Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984); *see also Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (awarding the high-end of the non-infringing statutory damages range at default judgment for willful trademark infringement).

*ii. Copyright infringement*

For copyright infringement, a copyright owner can recover "not less than $750 or more than $30,000 as the court considers just" in statutory damages. 17 U.S.C. § 504(c)(1). When copyright infringement is willful, "the court in its discretion may increase the award of statutory damages to a sum not more than $150,000." 17 U.S.C. § 504(c)(2). Willful infringement occurs when an infringer knows that his or her acts constitute copyright infringement. *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012)

Nayat knowingly infringed Arbonne's copyright because Nayat's nearly identical conduct in the past resulted in a final judgment against her for copyright infringement. (ECF No. 1). Thus, Nayat acted willfully and is liable for up to $150,000 in statutory damages. However, the court will award only $30,000 to ensure that damages are proportionate to Nayat's infringing

James C. Mahan
U.S. District Judge

activity. *See, e.g.*, *Microsoft Corp.*, 549 F. Supp. 2d at 1238 (awarding $30,000 at default judgment for defendant's willful infringement of plaintiff's copyright).

### *iii. Breach of Contract*

The settlement agreement provides that in the event of a breach Nayat "shall pay, as liquidated damages and not as a penalty, damages in the amount of $15,000.00 for each violation . . ." (ECF No. 1). Although Nayat was offering at least 91 infringing goods, Arbonne seeks liquidated damages for only three instances of infringement. (ECF No. 11). Thus, Arbonne is entitled to $45,000 in liquidated damages.

### *iv. Summary*

For the reasons set forth above, the court will award Arbonne damages in the amount of $475,000 based on following formulation: $400,000 for trademark infringement; $30,000 for copyright infringement; and $45,000 for breach of contract. *See Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010–11 (9th Cir. 1994) (holding that a court can award statutory damages under both the Copyright Act and Lanham Act when the defendant's act simultaneously infringed plaintiff's trademark and copyright).

### IV.     CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Arbonne's motion for default judgment (ECF No. 11) be, and the same hereby is, GRANTED, consistent with the foregoing.

The clerk shall enter judgment against Nayat Semerciyan in the amount of $475,000 and close the case.

DATED March 27, 2019.

_____
UNITED STATES DISTRICT JUDGE